UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Annalisa Capaccio,

                              Plaintiff,

      v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

16-CV-843 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). (Dkt. No. 18.) Pending before the Court are cross-motions by plaintiff Annalisa Capaccio and defendant the Commissioner of Social Security (the "Commissioner"), under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 12, 13.) Plaintiff is challenging the Commissioner's denial of disability benefits and supplemental income benefits under Title II and Title XVI of the Social Security Act. Plaintiff believes that the Commissioner should have considered her HIV infection a severe impairment. The failure to account for that severe impairment, in plaintiff's view, had a ripple effect on how the Commissioner assessed her ability to do work in the national economy. Plaintiff also argues that the Commissioner, when considering her work limitations, did not sufficiently take into account non-exertional limitations such as her obesity, major depressive disorder, and attention deficits. The Commissioner responds that plaintiff's HIV medication has left her without symptoms and with a suppressed viral load. The Commissioner argues further that the bulk of the record acknowledges some social and cognitive limitations but does not support the severity of limitations that plaintiff suggests.

The Court has deemed the motions submitted on papers under Rule 78(b). For the reasons below, the Court grants the Commissioner's motion and denies plaintiff's cross-motion.

## II. BACKGROUND

### A. *Factual Background*

The record contains numerous details from plaintiff's medical history. The Court will focus on those details that are germane to the arguments in plaintiff's motion.

The record includes medical records from Roswell Park Cancer Institute. A clinic note from May 23, 2012 stated that plaintiff's HIV viral load at the time was undetectable. (Certified Administrative Record, Dkt. No. 7, at 361 (hereafter noted as [361]).) That same day, a physical exam indicated that enlarged lymph nodes had reduced considerably after treatment with Atripia. [363.] A clinical record from WNY Medical from August 10, 2012 noted that plaintiff's HIV infection was asymptomatic. [509.] Follow-up notes from April 30 and May 14, 2013 added the details that plaintiff was compliant with her Atripia therapy and had a stable mood. [517, 521.] A follow-up note from August 13, 2013 added that plaintiff was feeling well and "feeling great on the Atripia." [531.] Plaintiff was diagnosed with a multi-nodular thyroid when she visited Roswell Park on September 4, 2013. [613.] Plaintiff continued to report feeling well during a follow-up visit on April 1, 2014, adding only that she felt fatigue. [770.] Compliance with HIV medication continued through October 29, 2014 and June 2, 2015. [798, 823.]

The record includes a consultative psychiatric evaluation from psychologist Kevin Duffy, Psy. D., dated August 7, 2012. Dr. Duffy noted generally coherent and goal-directed thought processes. [434.] Dr. Duffy noted further that plaintiff had grossly intact attention and concentration skills, average cognitive functioning, and fair insight and judgment. [435.] Dr. Duffy concluded that plaintiff might have difficulty maintaining attention and concentration but could

2

understand simple directions and perform simple tasks independently. [435.] Dr. Duffy did diagnose plaintiff with bipolar and anxiety disorder but could not conclude that any of plaintiff's psychiatric symptoms interfered with her ability to function on a daily basis. [436.]

A second consultative psychiatric evaluation occurred on January 27, 2015 before psychologist Janine Ippolito, Psy. D. Dr. Ippolito found that plaintiff had intact attention and concentration; intact recent and remote memory skills; and average cognitive functioning with fair to good insight and judgment. [759.] Plaintiff was noted to be capable of daily activities. [759.] Dr. Ippolito concluded, as a medical source statement, that plaintiff had moderate limitations relating adequately with others due to emotional distress and fatigue. [760.] Plaintiff otherwise was able to understand simple directions and instructions; perform simple tasks independently; and maintain attention and concentration along with a regular schedule. [760.] Plaintiff also was able to perform complex tasks independently. [760.]

The record includes a consultative orthopedic examination conducted on August 7, 2012 by Hongbiao Liu, M.D. Dr. Liu diagnosed right arm pain following right arm surgery but otherwise found a full range of motion in all extremities. [440.] Dr. Liu found further that plaintiff's HIV viral load was still undetectable as of August 2012. [440.] Dr. Liu concluded, as a medical source statement, that plaintiff had mild limitations for routine activities and should try to avoid lifting and carrying. [440.] No other limitations were noted.

The record contains a psychiatric review by agency psychiatrist J. Echevarria dated August 31, 2012. Based on the checkboxes in the form, the psychiatric review specifically considered Medical Listing 12.04 for affective disorders. [441.] While noting the diagnosis of bipolar disorder from Dr. Duffy, the review nonetheless reached the conclusion that plaintiff did not meet the diagnostic criteria for Listing 12.04. [444.] The review included notations that plaintiff had no

3

restricted activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration; or repeated episodes of deterioration. [451.]

### B. Procedural Background

On June 7, 2012, plaintiff filed her initial application for Title II Disability Insurance Benefits ("SSD") and Title XVI Supplemental Security Income ("SSI"). [252.] Following an initial denial, a hearing occurred on September 17, 2012 before an Administrative Law Judge ("ALJ"). [104.] On April 30, 2014, the ALJ issued a partially favorable decision that found plaintiff's allegations generally credible and found plaintiff disabled as of April 1, 2013. [112.] The ALJ found that plaintiff satisfied the requirements of Listings 12.04 and 12.06. The ALJ expected medical improvement and recommended a continuing disability review in 24 months. [112.] The Appeals Council, however, invoked its *sua sponte* review authority under 20 C.F.R. § 404.969, vacated the partially favorable decision, and remanded for further proceedings. [120.] The Appeals Council believed that the record available at the time did not support marked difficulties in social functioning or maintaining concentration as would be needed to satisfy Listings 12.04 or 12.06. [120.]

On remand and after a second hearing, the ALJ issued an unfavorable decision on September 1, 2015. [15.] The ALJ found that plaintiff had the following severe impairments: obesity, major depressive disorder, recurrent, moderate with anxious distress, and attention deficit hyperactivity disorder. [20.] The ALJ found this time that plaintiff did not satisfy any medical listings; plaintiff, in the ALJ's view, had no marked limitations, no repeated episodes of decompensation, and no evidence of residual disease. [22.] Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform medium work with some capacity for occasionally understanding, remembering, and carrying out complex and detailed tasks. [23.]

Among other analysis, the ALJ noted that plaintiff is HIV-positive but did not exhibit symptoms of AIDS or other related symptoms:

> While the claimant is HIV positive, the record indicates her viral load is undetectable. Her allegations that her medications, including all HIV positive medications, cause her fatigue, are not supported by the objective records. She receives no other treatment. These facts in and of themselves strongly suggest the claimant has in fact exaggerated her symptoms and limitations, and that the record in general does not objectively support her allegations.

[24.] The ALJ concluded that plaintiff could not return to her past work but could perform jobs such as a laundry laborer and industrial cleaner. [29.] The Appeals Council affirmed the denial on August 25, 2016, at which point plaintiff exhausted her administrative remedies.

Plaintiff commenced this case by filing her summons and complaint on October 24, 2016. [1.] The parties filed their cross-motions on July 3 and September 1, 2017. Plaintiff challenges the Commissioner's final determination in two ways. First, plaintiff appears to combine two related arguments: the procedural argument that the ALJ did not even consider her HIV status at Step Two; and the substantive argument that the ALJ should have found a severe impairment based on HIV at Step Two. "Because the HIV was not found to be a severe impairment at step two, the ALJ did not consider listing 14.08. Assuming Plaintiff did not meet that listing, the ALJ would have continued with his consideration of Plaintiff's entire residual functional capacity, including the HIV infection, at steps four and five. He did not do so. Therefore, the ALJ's RFC was [] incomplete and cannot stand." (Dkt. No. 12-1 at 22.) Second, plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence "because it fails to incorporate [her] ongoing non-exertional limitations stemming from her obesity, major depressive disorder, recurrent, moderate with anxious distress, ADHD, and, had he properly considered it, the HIV infection, and how those limitations would impact her ability to sustain full-time work activity, eight hours a day, five days a week or an equivalent schedule." (*Id.* at 23.) While reciting the clinical basis for her position,

5

plaintiff notes "the ALJ's about-face from finding [her] disabled pursuant to listings 12.04 and 12.06 on April 30, 2014." (*Id.* at 25.)

The Commissioner opposes plaintiff's motion in all respects. According to the Commissioner, the record does not provide a sufficient reason to consider plaintiff's HIV status a severe impairment:

> Here, the medical records do not suggest any significant symptoms or impairments stemming from Plaintiff's HIV positive status. Plaintiff did not develop AIDS. T15-16, 40. Her HIV infection was consistently described as asymptomatic by her doctors. T476, 477, 500, 503, 504, 515, 527, 563, 564, 578, 579, 591, 765, 766, 768, 769, 772, 774, 775, 777, 778, 780, 783, 784, 787. In her testimony, Plaintiff stated that her HIV was in "remission" and reported that her viral load was undetectable. T40. Her examination findings reflected normal gait, intact motor strength and full range of motion. T564, 579, 591. She repeatedly told her doctors that she felt "great." T563, 578, 690.

(Dkt. No. 13-1 at 19.) With no severe impairments left unaddressed, according to the Commissioner, the RFC determined by the ALJ properly took into account plaintiff's abilities and limitations:

> Here, the ALJ specifically determined that Nurse Bagen's report was contradicted by the record as a whole. T22. Specifically, her claims that Plaintiff suffered from recurrent severe panic attacks (as well as irrational fear of objects, illogical thinking, manic syndrome, decreased energy, blunt affect and mood disturbance through autonomic hyperactivity) simply were not corroborated anywhere else in the medical record. T22, 809. Likewise, the ALJ found no support for Nurse Bagen's assessment that Plaintiff had extreme limitations in activities of daily living, maintaining social functioning, and four or more episodes of decompensation per year. T22. Indeed, the ALJ noted that this was flatly contradicted by Nurse Bagen's own assessment that Plaintiff's GAF was 65, reflective of only mild symptoms. T22, 808.
>
> The ALJ further noted that Dr. Bagen's report was directly contradicted by the opinions of Dr. Ippolito and Dr. Duffy. T23. Specifically, consultative examiner Dr. Ippolito examined Plaintiff and concluded that her problems would not be significant enough to interfere with her functioning on a daily basis. T755. Dr. Duffy also performed a consultative examination and did not see any clear indicia that Plaintiff's psychiatric problems were significant enough to interfere with her ability to function on a daily basis at this time. T431. The ALJ properly determined that these opinions deserved greater weight than Nurse Bagen's assessment. *See*

> *Genier v. Astrue*, 298 F. App'x 105, 108–09 (2d Cir. Nov. 5, 2008) ("[T]he ALJ was free to discount the assessments [of non-acceptable medical sources] accordingly in favor of the objective findings of other medical doctors.").

(*Id.* at 22–23.)

## III. DISCUSSION

### C. Standard of Review Generally

The ultimate issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this

burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### D. *HIV as a severe impairment*

The Court first will examine plaintiff's argument that the ALJ should have considered her HIV status to be a severe impairment. "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits. In such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience." *Bowen v. Yuckert*, 482 U.S. 137, 148 (1987). Looking ahead to medical listings, Listing 14.11 addresses HIV infection. The listing requires documentation of infection plus some objective manifestation of disease including lymphoma, leukoencephalopathy, low absolute cell counts, repeated hospitalizations, or repeated physical manifestations. *See* Listing 14.11, 20 C.F.R. § Pt. 404, Subpt. P, App. 1. "To satisfy the functional criterion in a listing, your immune system disorder must result in a 'marked' level of limitation in one of three general areas of functioning: Activities of daily living, social functioning, or difficulties in completing tasks due to deficiencies in concentration, persistence, or pace." *Id.*

Here, substantial evidence supports the ALJ's decision not to consider plaintiff's HIV status as a severe impairment or under Listing 14.11. As noted above, plaintiff's clinical records show consistently that plaintiff was compliant with her medication and felt good while taking it. *Cf. Worthy v. Barnhart*, No. 01 CIV. 7907 (JSM), 2002 WL 31873463, at *5 (S.D.N.Y. Dec. 23, 2002) (no disability for HIV where status was stable and no opportunistic infections were present); *see also*

9

*Quiles v. Barnhart*, 338 F. Supp. 2d 363, 372 (D. Conn. 2004) (remanding at Step Five but finding no severe impairment for HIV, where the plaintiff's "adherence to his drug regimen significantly alleviated his symptoms"). Plaintiff maintained average cognitive functioning with fair to good insight and judgment. Plaintiff also consistently had undetectable viral counts. As the ALJ noted when considering her HIV status [24], plaintiff was not receiving other treatment specifically for HIV. To the extent that nurse practitioner Jenny Bagen and others took note of some symptoms such as fatigue, the record as a whole does not show any limits to physical or cognitive functioning that would rise to the level of a severe impairment or that would satisfy the criteria in Listing 14.11. *Cf. Roman v. Barnhart*, 477 F. Supp. 2d 587, 598 (S.D.N.Y. 2007) (no disability without wasting syndrome or other chronic conditions). The Commissioner prevails as to this issue.

### E. Determination of the RFC

Next, the Court will consider plaintiff's argument about how the Commissioner determined her RFC. "Once a disability claimant proves that his severe impairment prevents him from performing his past work, the Secretary then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (citations omitted). "To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." *Id.* § 404.1567(c). "Generally speaking, if a claimant suffers only from exertional impairments, *e.g.*, strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. For a claimant whose characteristics match the criteria of a particular grid rule,

10

the rule directs a conclusion as to whether he is disabled. Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, application of the grids is inappropriate. Instead, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (internal quotation marks and citations omitted).

Here, the Court takes note of several factors that went into the ALJ's determination of plaintiff's RFC. Plaintiff consistently was observed with a normal gait, intact motor strength, and full range of motion. [*E.g.*, 362, 402, 428, 440, 477, 521.] *Cf. Sweeney v. Colvin*, No. 3:13CV00703 (SALM), 2015 WL 11237311, at *16 (D. Conn. Aug. 28, 2015) (normal range of motion taken into account), *report and recommendation adopted*, No. 3:13-CV-703 (JCH), 2015 WL 5684024 (D. Conn. Sept. 28, 2015). The only temporary exception was an arm fracture. [382, 440.] Plaintiff consistently was diagnosed with depression, bipolar, or anxiety disorder that imposed some limitations on her social functioning. Nonetheless, as noted above, plaintiff consistently was observed as having average cognitive functioning with fair to good insight and judgment. *Cf. Scanlon v. Colvin*, No. 15-CV-0145-A, 2016 WL 4944332, at *8 (W.D.N.Y. Sept. 16, 2016) (RFC properly reflected "at most, moderate limitations" in cognitive and social functioning); *Steffens v. Colvin*, No. 6:14-CV-06727 (MAT), 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) (RFC properly matched the plaintiff's stress and social limitations). Plaintiff also was regularly observed with normal mood and affect, and with articulate and fluent speech. [*E.g.*, 362, 402, 428, 477, 485, 521.] The vocational expert who testified at plaintiff's second hearing took these limitations and abilities into account and also considered a limitation to unskilled work. [54–55.] The jobs in the national economy that the vocational expert found are consistent with the weight of the record including the examinations from the consultative physicians. [436, 440, 760.] Under these circumstances, the ALJ

had discretion to give less weight to the treatment notes from the nurse practitioner, Jenny Bagen, to the extent that those notes suggested greater impairments than the weight of the record. The ALJ's determination of plaintiff's RFC thus was supported by substantial evidence.

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) and denies plaintiff's cross-motion (Dkt. No. 12). The Clerk of the Court is directed to close this case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: August 16, 2018